UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**KELLY LEIBFRIED,**
*Individually and as Special Administrator of the Estate of Charles Leibfried*, **et al.,**

        **Plaintiffs,**

  v.                             Case No. 20-CV-1874

**CATERPILLAR, INC,**

        **Defendant.**

---

### DECISION AND ORDER

---

**1. Background**

Charles Leibfried died when the Caterpillar model 745C articulated dump truck he was driving rolled over. Kelly Leibfried, on her own behalf as Charles's wife and as special administrator of Charles's estate, brought this action against Caterpillar, Inc., alleging that Charles's death was caused by the defective design of its dump truck. Joining Kelly as a plaintiff is Sentry Insurance Company, which provided worker's compensation benefits related to Charles's death. (ECF No. 1, ¶ 16.)

The plaintiffs allege that the rollover protective structure (sometimes referred to as the ROPS) in the truck was defective. Akin to a roll cage or rollbar, a rollover

protective structure is a metal structure around the cab of the truck and is intended to maintain a safe space for the operator if the vehicle rolls over. The plaintiffs allege that Caterpillar's rollover protective structure was defective because it collapsed when the dump truck rolled over.

**2. Caterpillar's Motion to Exclude the Expert Testimony of Brian Herbst**

The admissibility of expert opinions is governed by Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *Kirk v. Clark Equip. Co.*, 991 F.3d 865, 871 (7th Cir. 2021). Under Rule 702 the court acts as gatekeeper to ensure that proffered expert testimony is both relevant and reliable. *Id.* at 872 (quoting *Daubert*, 509 U.S. at 589). "In performing this role, the district court must engage in a three-step analysis, evaluating: '(1) the proffered expert's qualifications; (2) the reliability of the expert's methodology; and (3) the relevance of the expert's testimony.'" *Id.* (quoting *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017)).

Brian Herbst opines, in material part, that Caterpillar's articulated dump truck was "defective and unreasonably dangerous due to an inadequate occupant protection system for rollovers. Specifically, it employs a structurally inadequate [rollover protective structure] design that allows excessive intrusion in a very foreseeable and low severity rollover environment." (ECF No. 57-1 at 40.) Alternative designs "were readily and inexpensively available that would have resulted in a non-defective roof with minimal roof crush susceptibility." (ECF No. 57-1 at 40.)

**2.1. Qualifications**

Brian Herbst is a mechanical engineer with more than 20 years of experience, nearly all of which relates "directly to motor vehicle testing, crashworthiness, restraint system, and structural analysis." (ECF No. 57-1 at 4.) He has "been called upon to analyze several hundred real world accidents." (ECF No. 57-1 at 4.)

Caterpillar argues that Herbst is not qualified to offer his opinions because most of his experience relates to on-highway vehicles, whereas here his opinions relate to an off-highway vehicle. (ECF No. 57 at 3-4.) Before this case the only off-road vehicles Herbst assessed were utility task vehicles (UTVs). (ECF No. 57 at 5.) "He has never offered testimony regarding the crashworthiness of off-highway, earth-moving machinery," been involved in the design of such a vehicle, never tested the rollover protective structure in this type of vehicle, or performed or otherwise been involved in testing whether such a vehicle met the industry standard for such a structure. (ECF No. 57 at 5.)

It is not enough that an expert possesses some manner of general expertise. An engineer is not necessarily qualified to opine on all engineering questions. *See Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010) ("Simply because a doctor has a medical degree does not make him qualified to opine on all medical subjects."). What matters under Rule 702 is whether the expert is qualified to answer the specific question presented. *See Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010).

But an expert need not have experience answering the precise question presented to be qualified as an expert. For example, the Court of Appeals for the Seventh Circuit acknowledged that an engineer could offer an opinion about the safety of a ladder despite having never designed a ladder for commercial use or worked in the ladder industry. *Baugh v. Cuprum S.A. De C.V.*, 845 F.3d 838, 845 (7th Cir. 2017); *see also Superior Aluminum Alloys, LLC v. United States Fire Ins. Co.*, No. 1:05-CV-207, 2007 U.S. Dist. LEXIS 46688, at *16 (N.D. Ind. June 25, 2007) ("District courts in the Seventh Circuit have qualified witnesses as experts even though they did not specialize or have experience in the particular product or field involved in the case." (citing cases)).

Although on-highway vehicles may be different from off-highway vehicles, the plaintiffs have demonstrated that, in terms of the sort of analysis that Herbst undertook regarding how structures respond to the forces of an accident, the engineering principles are the same. Herbst's lack of experience in designing or testing rollover protective structures in off-road earth-moving machinery does not preclude him from applying engineering principles within his ken to the facts of this case. The plaintiffs have demonstrated that Herbst has ample experience to be able to provide the opinions he offers in his report.

**2.2. Reliability**

The fact that an expert is qualified to give an opinion is not by itself a sufficient basis for admissibility. *Kirk*, 991 F.3d at 873. In assessing the reliability of an expert opinion courts may

> consider the following non-exhaustive factors:
>
> (1) Whether the particular scientific theory can be (and has been) tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has achieved general acceptance in the relevant scientific or expert community.

*Id.* (quoting *Deputy v. Lehman Bros., Inc.*, 345 F.3d 494, 505 (7th Cir. 2003)) (internal brackets and quotation marks omitted); *see also Gopalratnam*, 877 F.3d at 779-80 (discussing additional factors outlined in the Notes of Advisory Committee on Rules to the 2000 Amendment of Rule 702).

Because there are many different kinds of experts and expertise, the test for reliability is flexible, and no one factor is dispositive. *Kirk*, 991 F.3d at 873; *Gopalratnam*, 877 F.3d at 780. Courts must be mindful that they are not assessing the correctness of the expert's opinion but merely the soundness of the expert's methods. *Daubert*, 509 U.S. at 595 ("The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate."); *Kirk*, 991 F.3d at 873; *Kopplin v. Wis. Cent. Ltd.*, 914 F.3d 1099, 1104 (7th Cir. 2019) ("The focus is on the expert's methodology, not his ultimate conclusions."). "The soundness of the factual underpinnings of the expert's analysis and

the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact, or where appropriate, on summary judgment." *Gopalratnam*, 877 F.3d at 781 (quoting *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000); citing *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 806 (7th Cir. 2013)).

Herbst created a digital model of Leibfried's damaged truck. He then purchased a new rollover protective structure from Caterpillar, created a digital model of it, and subjected it to a crash test to roughly simulate the rollover of Leibfried's truck. With that data he conducted a finite element analysis, which is a type of computer modeling where he can test how forces affect a three-dimensional structure. *See Cordis Corp. v. Medtronic Ave, Inc.*, 511 F.3d 1157, 1170 (Fed. Cir. 2008). He validated his digital model by conducting a crash test in the model and confirming that the results in the model were consistent with the result of his real-world crash test. He then manipulated the virtual crash test to produce damage consistent with the damage to Leibfried's truck. From there, he tested his recommended design changes to confirm that, with his recommended changes, the rollover protective structure would not have collapsed during the rollover that Leibfried experienced.

The International Organization for Standardization, an independent, non-governmental international organization with a membership of 169 national standards bodies, *see* ISO, *About Us*, https://www.iso.org/about-us.html, promulgated ISO 3471, setting forth minimum requirements for rollover protection in earth moving equipment

like the Caterpillar truck Leibfried was driving. As recounted by Herbst in his report, ISO 3471 states that the driver compartment of such a vehicle should provide crush protection for a seat-belted driver if the vehicle is traveling 10 miles per hour and completely rolls over down a 30-degree hill. (ECF No. 57-1 at 18.) The Occupational Safety and Health Administration (OSHA) requires that "rollover protective structures for designated scrapers, loaders, dozers, graders, crawler tractors, compactors, and rubber-tired skid steer equipment" meet the test and performance requirements of ISO 3471. 29 C.F.R. § 1926.1001. Herbst acknowledges that Caterpillar's truck exceeded that standard.

Caterpillar argues that Herbst did not apply a reliable methodology because he did not confine himself to determining whether the Caterpillar truck that Leibfried was driving met the ISO 3471 standard. Its argument incorrectly assumes that Caterpillar's compliance with ISO 3471 precludes a claim that its vehicle was unreasonably dangerous. *Cf.* § 6:9. Proof of defect—Other recurring issues—Safety standards, 1 Owen & Davis on Prod. Liab. § 6:9 (4th ed.) (noting that compliance with industry standard is rarely dispositive); *see also* § 2:15. Proof of negligence—Industry standards as custom, 1 Owen & Davis on Prod. Liab. § 2:15 (4th ed.) (discussing *The T.J. Hooper*, 60 F.2d 737, 740 (2d Cir. 1932) (Hand, J.), and the fact that, for a variety of reasons, industry norms may not reflect reasonable prudence); *see also Lees v. Carthage Coll.*, 714 F.3d 516, 525 (7th Cir. 2013) ("even formal industry standards are not dispositive as to negligence liability"

(quoting *Michaels v. Mr. Heater, Inc.*, 411 F. Supp. 2d 992, 997 (W.D. Wis. 2006))); *Schmorrow v. Sentry Ins. Co.*, 138 Wis. 2d 31, 39, 405 N.W.2d 672, 676 (Ct. App. 1987) ("Compliance with industry custom does not establish due care as a matter of law." (quoting *Fischer v. Cleveland Punch & Shear Works Co.*, 91 Wis. 2d 85, 97, 280 N.W.2d 280, 286 (1979))).

ISO 3471 establishes, at most, the method for determining whether a rollover protective structure complies with the standard. It did not establish a definitive methodology for testing the safety of earth-moving equipment in rollovers. As Herbst noted, even Caterpillar acknowledged that ISO 3471 does not necessarily reflect best practices in terms of business ethics or user safety. (ECF No. 57-1 at 20.)

ISO 3471 does not, for example, contemplate a vehicle traveling more than ten miles per hour. The Caterpillar truck that Leibfried was operating was estimated to be traveling at between 17 and 22 miles per hour at the time of the rollover (ECF No. 57-3 at 2) and was capable of traveling up to 34 miles per hour (ECF No. 57-3 at 35). A product that complies with ISO 3471 is not reasonably safe as a matter of law. Herbst's methodology was not deficient simply because he tested the rollover protective structure with tests that were not specified in ISO 3471 and found that the truck Leibfried was driving was defective even though it complied with ISO 3471.

Caterpillar's criticism that the crash test that Herbst performed did not accurately replicate the conditions that would exist when the rollover protective structure was

attached to the truck (ECF No. 57 at 12-13) did not render his method unreliable. Often it is not feasible to duplicate all the circumstances of a complex accident. *See Lapsley v. Xtek, Inc.*, 689 F.3d 802, 815 (7th Cir. 2012) ("physical re-creations of industrial accidents are not always feasible or prudent"). The imprecision inherent in recreations or simulations provides fodder for cross-examination, but it does not necessarily make a re-creation unreliable.

Nor is Herbst's methodology unreliable because it involved manipulating his model until he achieved his desired results. Manipulating the virtual model to produce results that approximated the post-accident condition of the cab simply enabled Herbst to test how his alternative design would perform in a crash comparable to the one Leibfried experienced.

Herbst's failure to document his methodology for scanning the rollover protective structure or the number or location of the thickness tests he performed will give Caterpillar's attorneys something to discuss on cross-examination and talk about in closing argument, but it does not undermine his methodology. Methodology is about what an expert did, not necessarily about what he documented.

The fact that Herbst did not look at designs, tests, or the performance of other vehicles (ECF No. 57 at 11-12) or drive such a truck (ECF No. 57 at 12), at most, go to the persuasiveness of his conclusions and not the reliability of his methodology. Similarly, Caterpillar's contention that Herbst failed to consider that some of the damage observed

9

to the cab may have been caused from rescue efforts (ECF No. 57 at 14) does not undermine the reliability of his methodology. Herbst noted that rescuers cut and rotated a pillar to extricate Leibfried. (ECF No. 57-1 at 9.) But he explained that he did not believe that the extrication process induced additional material damage and rather may have undone some of the damage from the rollover. (ECF No. 57-2 at 14, 53:20-54:1.) Whether, and to what extent, any damage that Herbst attributed to the accident in reality is really attributable to rescue efforts is a matter for cross examination at trial.

Finally, Caterpillar also argues that Herbst's opinion regarding a safer alternative design was not the product of a reliable methodology because he did not test how that design would perform in other conditions or whether it would comply with ISO 3471. (ECF No. 57 at 16.) Caterpillar's criticisms go to the persuasiveness of his opinion and, specifically, whether Herbst's alternative design was actually safer and feasible.

### 2.3. Conclusion as to Herbst

Herbst is qualified as an expert by knowledge, skill, experience, training, or education to offer the opinions he presents in his report (ECF No. 57-1 at 40). Those opinions will be helpful to the finder of fact, are based on sufficient facts and data, the product of reliable principles and methods, specifically computer finite element analysis validated by experimental crash test data. Such computer modeling is an established, tested, and accepted method for evaluating how objects respond to forces. *See Lapsley*, 689 F.3d at 815 ("Around the world, computers simulate nuclear explosions, quantum

mechanical interactions, atmospheric weather patterns, and innumerable other systems that are difficult or impossible to observe directly. A mathematical or computer model is a perfectly acceptable form of test."); *see also Baugh*, 845 F.3d at 845 (quoting *Lapsley*, 689 F.3d at 815; citing *Cummins v. Lyle Indus.*, 93 F.3d 362, 369 (7th Cir. 1996)). Caterpillar's criticisms go to the weight of Herbst's ultimate opinions and not the reliability of his methodology. Consequently, Caterpillar's motion to exclude Herbst from testifying as an expert will be denied.

### 3. Caterpillar's Motion for Summary Judgment

#### 3.1. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it "might affect the outcome of the suit" and a dispute is "genuine" only if a reasonable factfinder could return a verdict for the non-movant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). In resolving a motion for summary judgment, the court is to "construe all evidence and draw all reasonable inferences from the evidence in" favor of the non-movant. *E.Y. v. United States*, 758 F.3d 861, 863 (7th Cir. 2014) (citing *Gil v. Reed*, 535 F.3d 551, 556 (7th Cir. 2008); *Del Raso v. United States*, 244 F.3d 567, 570 (7th Cir. 2001)). "The controlling question is whether a reasonable trier of fact could find in favor of the non-

11
Case 2:20-cv-01874-WED   Filed 11/03/23   Page 11 of 19   Document 75

moving party on the evidence submitted in support of and [in] opposition to the motion for summary judgment." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016).

### 3.2. Design Defect

Caterpillar argues that, without Herbst, the plaintiffs cannot sustain their claim that the truck had a design defect, and therefore it is entitled to summary judgment on that claim and all claims derived from it. (ECF No. 59 at 3-7.)

Because Herbst may offer his opinions that there was a defect in the design of the rollover protective structure, a reasonable finder of fact could conclude that Caterpillar's vehicle contained a design defect that made it unreasonably safe. This aspect of Caterpillar's motion for summary judgment must be denied.

### 3.3. Conscious Pain and Suffering

A decedent's estate may pursue a claim against a tortfeasor "for pain and suffering during the period intervening between the accident and death …." *Schilling v. Chi., N. S. & M. R. Co.*, 245 Wis. 173, 177, 13 N.W.2d 594, 596 (1944). But if the decedent was not conscious during that interval, he necessarily did not experience any pain or suffering. *Klawes v. Firestone Tire & Rubber Co.*, 572 F. Supp. 116, 120 (E.D. Wis. 1983) ("A victim who is rendered unconscious and never regains consciousness cannot be awarded damages for pain and suffering.") (citing *Schulz v. General Casualty Co.*, 233 Wis. 118, 288 N.W. 803 (1939)); *Delvaux v. Langenberg*, 125 Wis. 2d 569, 371 N.W.2d 430, 1985 Wisc. App. LEXIS 3344 (Ct. App. 1985) (unpublished) ("The pathologist testified

that Steven was unconscious from the time he arrived at the hospital until he died and would have felt no pain. The trial court correctly concluded that other testimony of consciousness was speculation.").

The estate lacks any direct evidence that Leibfried was conscious following the rollover. No one saw him move or heard him speak after the accident. The first person to reach Leibfried, a coworker, did so about a minute after the accident (ECF No. 69, ¶ 12) and described Leibfried as non-responsive and not moving (ECF No. 69, ¶¶ 13, 15). The medical examiner testified that she was not able to determine whether Leibfried was conscious after the rollover. (ECF No. 69, ¶ 20.) Specifically, she testified that she could not "confirm or rule out" whether Leibfried was conscious. (ECF No. 60-7 at 7, 22:4-9.) And because the plaintiffs failed to properly disclose Stephen Hargarten as an expert on this issue, *Leibfried v. Caterpillar, Inc.*, No. 20-CV-1874, 2023 U.S. Dist. LEXIS 106006, at *11 (E.D. Wis. June 20, 2023), the estate lacks any expert opinion that Leibfried was conscious for any period after the rollover. This lack of an expert distinguishes the only analogous case applying Wisconsin law cited by the parties. *See Estate of Zhu v. Hodgson*, 2021 WI App 10, 395 Wis. 2d 768, 954 N.W.2d 748, 2020 Wisc. App. LEXIS 604 (unpublished) (affirming jury's award of damages for pain and suffering because, although defendant testified he did not see decedent exhibit any signs of consciousness, expert testified that decedent was conscious for 30 to 60 seconds after accident).

Conversely, Caterpillar cannot point to any evidence that Leibfried was unconscious. It speculates that, because Leibfried had a stroke months earlier, maybe he had a stroke, lost consciousness, and that caused the accident. The fact that Caterpillar can offer only speculation that Leibfried lost consciousness distinguishes the only other similar case applying Wisconsin law, *Estate of Hoier v. Knapp*, 107 Wis. 2d 742, 321 N.W.2d 366, 1982 Wisc. App. LEXIS 3535 (Ct. App. 1982) (unpublished), where the court affirmed the district court's decision to not present to the jury the question of conscious pain and suffering because one medical expert testified that the decedent died instantly and the other expert did not have an opinion on the question. It is undisputed that Leibfried did not die instantly. According to the medical examiner, Leibfried was alive for minutes following the rollover until his brain shut down from lack of oxygen. (ECF No. 71, ¶¶ 61-63.[1]) But simply because he was alive does not mean he was conscious.

The court first briefly addresses the estate's alternative argument that, even if the court were to find that there is insufficient evidence that Leibfried was conscious after the rollover, the estate still would be entitled to recover damages for any fear of impending death Leibfried suffered between the time the vehicle went off the road and when the vehicle rolled over. (ECF No. 64 at 19-20.) Although the fear of impending death may merit damages, *see, e.g.*, *Martin v. Federated Rural Elec.*, 125 Wis. 2d 565, 371

---

[1] The court disregards the factual assertions contained in the plaintiffs' response because the plaintiffs failed to comply with Civil Local Rule 56(b)(6). *See Haymer v. YMCA*, No. 20-CV-1846, 2022 U.S. Dist. LEXIS 110175, at *1 n.1 (E.D. Wis. June 22, 2022); *GPM Se. LLC v. Riiser Fuels LLC*, 647 F. Supp. 3d 674, 693 (E.D. Wis. 2022).

N.W.2d 428, 1985 Wisc. App. LEXIS 3377 (Ct. App. 1985) (unpublished), as Caterpillar notes (ECF No. 72 at 9), Caterpillar could not be liable for such damages because there is no allegation that Caterpillar was at fault for the vehicle rolling over. It is not as if the plaintiffs allege that Leibfried knew the rollover protective structure was defective and would fail. To the contrary, the plaintiffs' design defect and negligence claims rest largely on the premise that a reasonable person in Leibfried's position would have expected that he would *not* die from a rollover and instead would have expected the rollover protective structure to protect him. The estate may not recover damages for any pain and suffering Leibfried may have experienced before the rollover and the failure of the rollover protective structure. The estate's claim is limited to the period after the rollover.

"Determining whether a decedent experienced pre-death pain and suffering when there is no eyewitness to the death is a difficult task." *F/V Carolyn Jean, Inc. v. Schmitt*, 73 F.3d 884, 885 (9th Cir. 1995) (applying admiralty law). Eyewitness evidence is not required; the decedent's estate may rely on inferences to support a claim of pain and suffering. *Cook v. Ross Island Sand & Gravel Co.*, 626 F.2d 746, 750 (9th Cir. 1980) (claim under the Jones Act) (discussing *In re United States Steel Corp.*, 436 F.2d 1256, 1275-76 (6th Cir. 1970)). *Deal v. A.P. Bell Fish Co.*, 728 F.2d 717, 718 (5th Cir. 1984) (per curiam). But "[t]he evidence must do more than provide mere speculation that the decedent was conscious and suffered pain." *Murphy v. Schneider Nat'l Carriers, Inc.*, No. 04-1280, 2006

15

U.S. Dist. LEXIS 65289, at *5 (C.D. Ill. Sep. 12, 2006) (applying Illinois law); *Harrison v. Burlington N. R. Co.*, 750 F. Supp. 316, 318 (N.D. Ill. 1990) (same).

While it is ultimately the estate's burden to prove that it was more likely than not that Leibfried was conscious and experienced pain and suffering before he died, the estate may sustain its burden by showing that there is no evidence that he lost consciousness. *See, e.g.*, *In re P & E Boat Rentals, Inc.*, 872 F.2d 642, 650 (5th Cir. 1989) (applying maritime law and Jones Act) (affirming trial verdict because "the coroner testified that Fusselman died of drowning and that there was no evidence of pre-death blows to the head to suggest that Fusselman had been rendered unconscious"); *Cook*, 626 F.2d at 750 (claim under Jones Act) ("The testimony that the decedent Dennis Cook had not suffered a skull fracture enabled the jury to draw the inference that the decedent had been conscious during his asphyxiation.); *McAleer v. Smith*, 791 F. Supp. 923, 929 (D.R.I. 1992) (claim under Jones Act, Death on the High Seas Act, and "general maritime survival law") ("the absence of any skull fracture or severe trauma to McAleer's body supports a reasonable inference that he was conscious at the time of his death and possibly experienced a great deal of anxiety and terror"); *Conway v. Adrian Carriers, LLC*, No. 15-01137-DRH, 2017 U.S. Dist. LEXIS 186135, at *12 (S.D. Ill. Nov. 9, 2017) (applying Illinois law) (denying defense motion for summary judgment on plaintiff's conscious pain and suffering claim regarding fatal injuries despite absence of evidence that decedent was conscious after accident and physician's opinion that

decedent's death from multiple blunt force injuries may have been instantaneous); *Murphy*, 2006 U.S. Dist. LEXIS 65289, at *6 (applying Illinois law) (denying summary judgment for the defendant even though the only evidence that the decedent experienced conscious pain and suffering after traffic accident was a witness who described decedent gasping for breath); *cf. F/V Carolyn Jean*, 73 F.3d at 885 ("Although eyewitness evidence of the decedent's consciousness is not essential, merely alleging pain and suffering is insufficient where the record supports a finding of almost instantaneous death." (internal citation omitted) (citing *Magee v. Rose,* 405 A.2d 143, 146 (Del. Super. 1979); *Deal,* 728 F.2d at 718).

Unlike the sort of violent collision that may commonly come to mind at the mention of a rollover accident, the accident here was more of a slow tip-over. The wheels of the bed portion of the truck stayed on the ground as the cab portion rolled 120 degrees down a hill. The speeds were slow enough that, according to the plaintiffs' expert, Leibfried would not have violently impacted any surface in the cab. (ECF No. 71, ¶¶ 56-57.) There is no evidence of any sort of traumatic injury that generally would be associated with the immediate loss of consciousness. *See, e.g.,* § 3:59. Pain and suffering—Showing of conscious pain and suffering, 1 Stein on Personal Injury Damages Treatise § 3:59 (3d ed.) (noting that relevant to the question of conscious pain and suffering is the "[n]ature of injury, such as severance of artery or blood vessel, as compared with injury associated with instant loss of consciousness, such as skull and

brain injury or massive injury to vital organ, decapitation, etc."). The only fracture noted in the medical examiner's report is a fracture to Leibfried's sixth cervical vertebrae (ECF No. 65-3 at 18) that was attributable to the pinning force of the collapsed cab (ECF No. 66-1, ¶ 29). There is no indication that his spinal cord was severed or injured. The only head injury[2] that Liebfried sustained was a "[d]ense hemorrhage [] within the soft tissues of the frontal to left-sided scalp." (ECF No. 65-3 at 16.) Neither the plaintiffs nor the defendant suggests that this was the sort of injury that would be expected to result in an immediate loss of consciousness. Other than that, Liebfried sustained only minor cuts and scrapes along with bruises to his right hand and left elbow. (ECF No. 65-3 at 16.)

Whether the plaintiffs have adduced enough evidence that Leibfried remained conscious following the rollover is admittedly a close question. But ultimately the court finds that, based on the facts presently before the court, a reasonable finder of fact could conclude that Leibfried experienced conscious pain and suffering following the rollover. Specifically, the absence of evidence that he suffered an injury consistent with a loss of consciousness is sufficient to sustain the inference that Leibfried was conscious until he lost consciousness from a lack of oxygen.

---

[2] In reply, Caterpillar refers to Leibfried as having suffered a "skull fracture" and cites the plaintiffs' response. (ECF No. 72 at 13.) No reference to a "skull fracture" is found in the plaintiffs' response and the court has not identified any such evidence in the record.

**IT IS THEREFORE ORDERED** that Caterpillar, Inc.'s "Motion to Exclude Brian Herbst's Expert Testimony" (ECF No. 56) is **denied**.

**IT IS FURTHER ORDERED** that Caterpillar, Inc.'s "Motion for Summary Judgment and Alternative Motion for Partial Summary Judgment on Conscious Pain and Suffering" (ECF No. 58) is **denied**.

**IT IS FURTHER ORDERED** that Caterpillar, Inc.'s "Consent Motion to Place Documents Under Seal" (ECF No. 74) is **granted in part**. The motion is denied with respect to the request to seal. The documents filed as ECF Nos. 65-6 and 65-7 are restricted to case participants. *See Electronic Case Filing Policies and Procedures Manual*, II, I, 2. a. (E.D. Wis.), https://www.wied.uscourts.gov/e-filing/ecf-policies-and-procedures.

Dated at Milwaukee, Wisconsin this 3rd day of November, 2023.

*William E. Duffin*
WILLIAM E. DUFFIN
U.S. Magistrate Judge